IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| **TRIBALCO, LLC,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-17-2827** |
| | ) | |
| **LITEYE SYSTEMS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Before this Court is Defendant Liteye Systems, Inc.'s Motion to Dismiss Tribalco, LLC's

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Defendant's Motion")(ECF

No. 22).  The Court has reviewed Defendant's Motion, and the opposition and reply thereto.  No

hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md.).  For the reasons presented below,

the Court hereby GRANTS Defendant's Motion.

### I.      Factual Background

Plaintiff brings suit alleging several causes of action, namely: breach of contract;

constructive fraud; and restraint of trade.  Plaintiff also seeks relief by way of declaratory

judgment and a permanent injunction.  Attached to the Complaint is a document which the

parties view as central to this dispute, titled "Exclusive Teaming and Distributorship Agreement"

("ETDA").  Id.  The parties have competing views of the breadth, scope and duration of the

ETDA.

Plaintiff is a "telecommunications and global integrated technology services and

solutions company."  Compl. ¶ 7.  Defendant is a "producer of surveillance systems for the

protection of critical military infrastructure, whose products include . . . Anti-UAV Defense

Systems ("AUDS")."  Compl. ¶ 8.  "On June 15, 2016, the Joint Improvised Threat Defense

Agency of the United States Department of Defense ("JIDA")" was seeking to purchase "ten to

fifteen AUDS."  Compl. ¶ 9.  The parties agreed this was an "opportunity" for them to pursue.

Compl. ¶ 10.  "On July 22, 2016, JIDA directed the U.S. Air Force Cycle Management Center

("AFLCMC") to issue a Letter of Intent" to Plaintiff for the purchase of the first four AUDS.

Compl. ¶ 11.  Five days later, the parties signed the ETDA.  Compl. ¶ 12.

On August 30, 2016, AFLCMC awarded a contract to Plaintiff for the production of three

AUDS, and two spare units.  Compl. ¶ 19.  On September 6, 2016, the parties entered into a

subcontract ("Subcontract") by which D would produce and provide the AUDS and spare parts.

Compl. ¶ 20.  Plaintiff contends that the "ETDA was broader in scope, time and subject matter

than the Subcontract."  Compl. ¶ 21.  The Subcontract expired on December 31, 2016.  Compl. ¶

23.

While Defendant was the producer of AUDS, the ETDA made Plaintiff the "exclusive

distributor of AUDS to the AFLCMC."  Compl. ¶ 15.  In 2017, Plaintiff contends that it took

various measures to advance the parties' relationship and to obtain additional contracts however,

Defendant effectively refused to cooperate.  Compl. ¶¶ 27-30.  On February 27, 2017, Defendant

sent Plaintiff a "cease and desist" letter disavowing "the ETDA, asserting that the ETDA had

been superseded by the Subcontract," and demanded that Plaintiff "cease any communications

with third parties concerning the procurement of AUDS supplied" by Defendant.  Compl. ¶ 31.

In August 2017, when a new opportunity arose for the production and sale of AUDS, Defendant

refused to cooperate with Plaintiff to pursue the proposal.  Compl. ¶¶ 33-34.

## II.     Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint."
McBurney v. Cuccinelli, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted).  "To survive a
motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a
claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937,
1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A court decides
whether this standard is met by separating the legal conclusions from the factual allegations,
assuming the truth of only the factual allegations, and then determining whether those allegations
allow the court to reasonably infer" that the plaintiff is entitled to relief.  A Society Without A
Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011).  Dismissal "is inappropriate unless,
accepting as true the well-pled facts in the complaint and viewing them in the light most
favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief.'"  Brockington v.
Boykins, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "should
accept as true all well-pleaded allegations and should view the complaint in a light most
favorable to the plaintiff"; the motion "should not be granted unless it appears certain that the
plaintiff can prove no set of facts which would support its claim and would entitle it to relief."
Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  The court "also may consider
documents attached to the complaint and the motion to dismiss if they are authentic and central
to the complaint."  Guzman v. D & S Capital, LLC, Civ. No. MAB 14-CV-01799, 2015 WL
772797, at *2 (D. Md. Feb. 20, 2015) (citing Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176,
180 (4th Cir. 2009) (citations omitted)).

### III.    Analysis

#### A.    The Breach of Contract Claim

Plaintiff's first cause of action rests exclusively on the alleged breach of the ETDA.

Compl. ¶ 48. Since the Court is considering a motion to dismiss, it "may also consider

documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the

motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt

Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). There is no dispute but that the

Subcontract expired by its terms on December 31, 2016. Compl. ¶ 23. The opening issue is

whether the ETDA was clear in its terms, imposing upon the parties an obligation to conduct

their affairs in accordance with said terms. The ETDA contains a provision choosing Maryland

law for its application. "This Agreement shall be governed by and subject to the jurisdiction of

the laws of the State of Maryland without regard to any of its choice of law provisions." ETDA,

¶ 13. Accordingly, the substantive contract law of Maryland applies.

Longstanding Maryland law sets forth the pleading standard for a breach of contract

claim. Such a claim "must of necessity allege with certainty and definiteness *facts* showing a

contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by

defendant." Polek v. J.P. Morgan Chase Bank, N.A., 424 Md. 333, 416 (2012) (quoting Cont'l

Masonry Co. v. Verdel Constr. Co., 279 Md. 476, 480 (1977). The "contractual obligation" of

Defendant is expressed in the ETDA. For purposes of Plaintiff's breach of contract claim, the

Complaint references the ETDA in paragraphs 12-17, 21, 31-32, and 40-48. The only

paragraphs in the Complaint that provide factual texture about the ETDA (as opposed to

argument or conclusions) are paragraphs 12-16, and 40. As to these paragraphs, Defendant

really takes issue with only two, paragraphs 14 and 40, set forth below:

14.    The purpose of the ETDA was to pursue the award of contracts to Tribalco for the procurement of AUDS by the United States Government.

40.    Liteye entered in to the ETDA with Tribalco for the purpose of the exclusive pursuit of Government contract awards to Tribalco for the Government's procurement of the Liteye AUDS product.  Exhibit A.

Comp. ¶¶ 14, 40.

### 1.    The ETDA is limited to the parties' pursuit of contracts with AFLCMC, JIDA, the Air Force or "the AUDS/JIDA opportunity."

Defendant challenges Plaintiff's view that the ETDA was a contract between the parties

created for the purpose of the exclusive pursuit of procurement of AUDS by the "United States

Government," or for "Government" contract awards to Plaintiff, or for the "Government"

procurement of Defendant's AUDS product.  A plain reading of the ETDA supports Defendant's

view.

As has been stated for decades,

> Courts in Maryland apply the law of objective contract interpretation, which provides that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding.

Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co., 434 Md. 37, 73 A.3d 224, 232 (2013)

(citations omitted).  Here, in all of its brevity, the ETDA is very "clear and definite" about the

purpose of this teaming exercise.  Every reference to the targeted audience is either to the

AFLCMC, JIDA, the Air Force or "the AUDS/JIDA opportunity."  The only uses of the term

"U.S. Government," or "Government" are in paragraphs 12 and 14.  Paragraph 12 speaks to how

the parties will treat sensitive information, while paragraph 14 speaks to how the agreement

should be treated should any portion of it be deemed "void, illegal, unenforceable or in conflict with any law." ETDA, ¶¶ 12, 14. The ETDA has nothing to do with the "Government" in its broadest sense.[1] It has everything to do with the parties' expectations going forward with the AFLCMC, JIDA and the Air Force. The scope of the agreement was focused and limited.[2]

This clarity of purpose also precludes the Court from considering Plaintiff's arguments regarding the post-execution activities of the parties. There is no need for the Court to "back-fill" a void that does not exist. Whether there was joint marketing activity to other branches of the government, or solicitations to the private sector is of no moment. The expressed intent is articulated in the ETDA. It contains an integration clause and a no oral modification provision. ETDA ¶ 15. The teaming agreement only has force and effect as it relates to the efforts of procurement directed to the AFLCMC for JIDA.

> **2.      The Plain Language of the ETDA is Ambiguous as to Whether the Teaming Agreement is Limited to a Single Procurement by AFLCMC for JIDA**

Most of the language of the ETDA includes terms that suggest that the teaming agreement was limited to a single effort to obtain a contract from either the AFLCMC, JIDA or the Air Force. While the language is cast overwhelmingly in the singular which provides support for Defendant's view, there is an outlier which states that Plaintiff will "receive distributor record pricing *for each award* of the AUDS product by the *AFLCMC for JIDA.*" This supports Plaintiff's theory that the ETDA was "never defined as being limited to a single procurement."

---

[1]    Plaintiff's arguments regarding the "Government's" desire to obtain pricing for spare parts is unavailing here for the same reason. The Complaint does not state that AFLCMC or JIDA sought such pricing.

[2]    There can be no reasonable dispute that the ETDA was anything other than a binding agreement. To the extent Plaintiff devotes a comment in a "drive-by" footnote to suggest a claim for mutual mistake, the Court here takes the same approach to conclude that no such claim is asserted in the Complaint.

Pl.'s Opp'n 8.  Accordingly, the Court cannot resolve this issue by granting or denying

Defendant's Motion.

### 3.    When JIDA Ceased to Exist, So Did the ETDA

The ETDA is unremarkable as a teaming agreement.  The Court is of the view that

teaming agreements are close cousins to letters of intent, commitment letters, and the like.

Typically, the function of these legal devices is to "provide the initial framework from which the

parties might later negotiate a final binding agreement." Burbach Broad. Co. of Del. v. Elkins

Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002).  These agreements can be binding in their own

right, but always with a view toward a future contractual relationship.  The ETDA refers to this

future endeavor(s) as "an opportunity."

In the first "Whereas" clause of the ETDA, it was agreed that the parties wanted to

pursue "an opportunity" for procurement by AFLCMC *for JIDA* of Defendant's AUDS product.

ETDA, p. 1.  As it relates to JIDA, the parties further agreed that:

- Plaintiff would "receive exclusive distributor of record pricing for each award of the AUDS product by the AFLCMC *for JIDA*" to Plaintiff (ETDA ¶ 2);
- The publicity regarding *"the AUDA/JIDA opportunity"* would require the joint approval of the parties (ETDA ¶ 7);
- The ETDA governed "only activities performed in connection with *the AUDA/JIDA opportunity"* (ETDA ¶ 8);
- The parties would not share profits or losses as a result of their efforts "in connection with *the AUDS/JIDA opportunity"* (ETDA ¶ 10); and,
- It might be necessary for the parties to share proprietary information in "connection with *the AUDS/JIDA opportunity"* (ETDA ¶ 12).

Plaintiff contends that Defendant became "unresponsive," disavowed the ETDA by its "cease and desist" letter of February 27, 2017, and effectively frustrated the purpose of pursing other opportunities for the production and sale of AUDS. Compl. ¶¶ 29-31.

The ETDA speaks to at least one "opportunity" which the parties hoped would and did arise through AFLCMC and JIDA. The ETDA is lacking in detail as to the quantity of AUDS to be produced as well as other particulars. The parties were fully expecting that the procurement process would provide the necessary specifics. Defendant contends that the Subcontract, as directed by JIDA through AFLCMC, was the sole "opportunity" envisioned under the ETDA. To the contrary, Plaintiff contends that the ETDA was enforceable beyond the Subcontract, that it was "not limited in scope" to the Air Force, the Subcontract, or the "purported reorganization of JIDA to JIDO." Pl.'s Opp'n 11. The Court finds that Plaintiff has satisfied its burden in setting forth sufficient facts to overcome Defendant's Motion as it relates to the ability of Plaintiff to enforce the ETDA beyond the Subcontract. Plaintiff has not met the standard of plausibility as it relates to its enforceability beyond the Air Force. The remaining issue is the impact of the non-existence of JIDA versus its transformation into the Joint Improvised Threat Defense Organization ("JIDO").

As set forth in the Complaint, as of September 30, 2016, JIDA was no longer an independent agency under the Department of Defense. Instead, JIDO was created under the control of the Defense Threat Reduction Agency. Compl. ¶ 9, n.1. The Complaint does not allege that JIDO "is the direct successor to JIDA," or that "it continues to perform under the same functions and duties as JIDA," or "that it maintains the same staff as JIDA," at stated in Plaintiff's Opposition. Pl.'s Opp'n 9. The Court's consideration is limited to the language in the Complaint and its attachments. These statements are not set forth in the Complaint.

Accordingly, Plaintiff's argument analogizing JIDA and JIDO to corporate restructurings or successor entities is unsupported and unavailing.

JIDA ceased to exist as of September 30, 2016. Any efforts by the parties to pursue "the AUDS/JIDA opportunity" also ceased to exist by that date. As the involvement of AFLCMC was uniquely tied to the participation of JIDA, the teaming agreement was at an end when the only Subcontract expired by its terms.

### B.    The Constructive Fraud Claim Cannot Be Maintained

There is no indication that Defendant, by word or deed, acted in a way to deceive Plaintiff or to misrepresent its participation in the project. Moreover, Plaintiff's constructive fraud claim suffers from the same fatal blow at its breach of contract claim. The demise of JIDA, and its link to AFLCMC, eviscerates Plaintiff's argument to extend the life of the relationship.

Plaintiff relies upon the following language from the ETDA. "All contacts with the AFLCMC concerning the AUDS/JIDA opportunity shall be coordinated by Tribalco. Liteye will support and participate in prime contract negotiations with the Air Force as reasonably requested by Tribalco." ETDA ¶ 6; Compl. ¶ 50; Pl.'s Opp'n 11. Plaintiff correctly contends that this language creates a legal duty for Defendant to support and participate in contract negotiations, however that expression is limited to "the AUDS/JIDA opportunity." To the extent Plaintiff held the belief that it would be the exclusive distributor of Defendant's AUDS products, Plaintiff does not allege that Defendant made false statements or acted with deceit.

Maryland case law provides the standard for constructive fraud as "a breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to

9

injure public interests." Canaj, Inc. v. Baker and Div. Phase III, LLC, 391 Md. 374, 421-22

(2006) (citations omitted). The ETDA does not create a more expansive legal duty and

Plaintiff's allegations do not create an equitable one. The ETDA, negotiated at arms-length by

separate business entities, does not bear the indicia of deceit.[3] As further stated by the federal

court, "[a]rms-length negotiations between representatives of commercial entities do not

establish an intimate nexus unless they invoke considerations of personal trust and reliance."

Sagent Tech., Inc. v. Micros Sys., Inc., 276 F. Supp. 2d 464, 471-72 (D. Md. 2003). The

Complaint here does not express the "personal trust and reliance" needed to sustain this claim.

The Complaint in no way approximates the "lengthy negotiations" about a "long-term

relationship" as set forth in Dierker v. Eagle Nat. Bank, 888 F. Supp. 2d 645, 656 (D. Md. 2012).

The transaction here was a garden variety contractual teaming agreement. Defendant was to

supply product for a specific entity by way of a joint bidding process with Plaintiff. Upon the

demise of said entity, Defendant's obligation dissipated. Plaintiff has no justifiable basis to

believe more than this.

In summary, the plain language of the ETDA does not suggest that Defendant had an

obligation to provide AUDS to any entity other than JIDA. Moreover, Plaintiff has not alleged

that Defendant's action deceived others, violated a public or private confidence, or injured public

interests. See Thompson v. UBS Fin. Servs. Inc., 443 Md. 47, 69 (2015).

### C.    The Restraint of Trade Claim Cannot Be Maintained

Like the constructive fraud claim, Plaintiff's restraint of trade claim fails with the demise

of its breach of contract claim. Defendant owed Plaintiff no duty to continue with sales of

---

[3]    Similarly, there is no "negligent misrepresentation" in play which would invoke the "intimate nexus" standard set forth in Griesi v. Atlantic Gen. Hosp. Corp., 360 Md. 1, 756 A.2d 548, 554 (2000).

AUDS to AFLCMC upon the expiration of JIDA, and no duty to seek future awards with the

Government in general.  Equally important, Plaintiff does not set forth the proper elements and

factual averments to support a claim for restraint of trade.

A restraint of trade claim exists in common law and by stature in Maryland.  Faw, Casson

& Co. v. Everngam, 94 Md. App. 129, 147 (1993).  The Complaint does not indicate whether

Plaintiff files this claim under the common law or statute.  In its opposition, Plaintiff asserts the

elements under the Maryland statute by stating, "[a] person may not . . . [b]y contract,

combination, or conspiracy with one or more other persons, unreasonably restrain trade or

commerce. . . ."  Pl.'s Opp'n 13-14 (citing Md. Code Com. Law § 11-204(a)(1)).

Plaintiff acknowledges that case law requires that an agreement in restraint of trade must

have "a significant adverse market impact" to be actionable.  The exclusion of a mere teaming

partner does not a restraint of trade make.  As Defendant correctly points out, merely

discriminating against Plaintiff is not an action which affects the marketplace.  Should Defendant

elect to team with others, there would be no meaningful impact on the market for AUDS.  The

lack of profits personal to Plaintiff is of no moment.  The government is still free to purchase

AUDS from Defendant or other sources.  The ETDA does not require Defendant to sell anything

through the good offices of Plaintiff beyond 2016.  Furthermore, Defendant correctly notes that

the Complaint does not suggest harm to the U.S. Government customer, to the market, or any use

of Defendant's supposed marketplace dominance to affect any market or markets.  The

Complaint is defective at its core.  As stated in Defendant's reply brief, "the antitrust laws are

intended to protect competition, not simply competitors, [and] only injury caused by damage to

the competitive process may form the basis of an antitrust claim."  Thompson Everett, Inc. v.

National Cable Adver., 57 F.3d 1317, 1325 (4th Cir. 1995).

**IV.    Conclusion**

Plaintiff's Complaint fails to assert actionable substantive claims of breach of contract, constructive fraud or the unlawful restraint of trade.  Without establishing these substantive causes of action, Plaintiff cannot prevail on the associated remedies which seek injunctive relief and a declaratory judgment.  For the reasons set forth above, Defendant's Motion to Dismiss is hereby GRANTED, Plaintiff's claims are dismissed with prejudice.


May 16, 2018                                                    /s/
                                                        Charles B. Day
                                              United States Magistrate Judge